IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TORI HOPKINS,[1] | § | |
| | § | No. 420, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 23-02-04TN |
| DEPARTMENT OF SERVICES | § | Petition No. 23-02881 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES (DSCYF), | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 11, 2024
Decided: June 12, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

### **ORDER**

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Child Attorney's response, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1) By order dated October 30, 2023, the Family Court terminated the parental rights of the appellant, Tori Hopkins, in her minor son, born in June 2022 (the "Child").[2] Mother appeals.

(2) On appeal, Mother's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has not provided any points for the Court's consideration. The appellee, the Delaware Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In June 2022, Mother gave birth to the Child at Christiana Hospital in Wilmington, Delaware. Hospital staff refused to discharge the Child to Mother's custody because they were concerned that Mother was unable to care for the Child, and DSCYF (which had custody of four of Mother's older children) filed for and

---

[2] The Family Court's order also terminated the parental rights of the Child's father. We refer only to facts in the record that relate to Mother's appeal.

received emergency custody of the Child. With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] Mother failed to appear at the preliminary protective hearing or the adjudicatory hearing. The Child had been placed with a maternal relative and was doing well in foster care. At the adjudicatory hearing, DSCYF noted Mother was not in compliance with the case plan that DSCYF had designed to facilitate her reunion with her older children who were in DSCYF's custody (the "original plan")—specifically, Mother was not receiving appropriate mental health or substance abuse treatment. The Family Court found that the Child was dependent in Mother's care given Mother's mental health problems, substance abuse, and her unwillingness to care for the Child as evidenced by her failure to communicate with DSCYF.

(4)     At the August 11, 2022 dispositional hearing, the Family Court reviewed the case plan that DSCYF had developed to facilitate Mother's reunification with the Child. Mother's case plan largely tracked the original plan, with two additional components: (i) Mother was required to resolve her criminal charges and not incur any additional charges, and (ii) Mother, who had a history of outbursts during her visits with her children in her other dependency-and-neglect

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. P. Rs. 212-219.

case, was required to demonstrate appropriate behavior during her interactions with the Child.

(5) At the November 15, 2022 and December 2, 2022 review hearings, the Family Court found that Mother had made no progress on her case plan. Mother had been re-arrested in October and was incarcerated. Moreover, Mother had not had any contact with the Child and had not been in contact with DSCYF, aside from one text she sent to her treatment worker before she was arrested. On January 11, 2023, DSCYF moved to change the permanency goal from reunification to the concurrent goals of reunification and termination of parental rights for purposes of adoption.

(6) On January 23, 2023, the Family Court held a permanency hearing. Mother abruptly left in the middle of the hearing, informing the parties that she had no desire to participate. The Child continued to do well in his foster placement—he was placed with his half-sister and was able to visit with his other half-siblings. At the conclusion of the hearing, the Family Court: (i) found that Mother had not made any progress on her case plan; (ii) granted DSCYF's motion to change the permanency goal; and (iii) ordered DSCYF to explore a competency evaluation or mental health evaluation for Mother to ensure that she understood the nature of the dependency-and-neglect proceedings.

(7) As of the March 9, 2023 post-permanency hearing, Mother was on probation, having been released from prison, and expressed a willingness to

4

complete her case plan. The Family Court found that, to date, Mother had not made any progress on her case plan. The Child continued to do well in foster care.

(8) The Family Court held another post-permanency hearing on May 18, 2023. As of the hearing, Mother was incarcerated for violating the terms of her probation and was enrolled in the Road to Recovery Program, which could help her complete certain elements of her case plan. Mother had not had any contact with the Child. The Child continued to do well in her foster home, and the foster mother was an adoptive resource.

(9) At the October 30, 2023, termination-of-parental-rights (TPR) hearing, the Family Court heard testimony from Mother, Mother's DSCYF treatment worker, and the Child's DSCYF permanency worker. DSCYF acknowledged that Mother had completed the parenting-class component of the original plan. However, the evidence presented at the TPR hearing fairly established that Mother: (i) was incarcerated at the Department of Correction's Hazel D. Plant Treatment Center and the Child was not permitted to live there; (ii) was unemployed; (iii) had not completed a substance abuse evaluation; (iv) had not completed a mental health evaluation despite DSCYF's repeated efforts to schedule one; and (v) had not had any contact with the Child.

(10) Following the hearing, the Family Court issued a bench ruling terminating Mother's parental rights in the Child on the basis of her failure to plan and issued a written order summarizing its findings. This appeal followed.

(11) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(12) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[5] *Id.* at 440.

[6] *Id.*

[7] *Id.*

[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[10] *Id.* at 537.

also find proof of at least one additional statutory condition.[11] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(13) Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate based on her failure to plan adequately for the Child's physical needs or mental and emotional health and development[14] and that the Child, who came into care as an infant, had been in DSCYF custody for more than six months.[15] The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and—giving particular weight to factors 4 (the Child's adjustment to his home, school, and community), 5 (the mental and physical health of the individuals involved), 6 (Mother's past and present compliance with her rights and responsibilities to the Child), and 8 (the parties' criminal histories)—found, by clear

---

[11] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

[12] *Shepherd*, 752 A.2d at 536-37.

[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[14] 13 *Del. C.* § 1103(a)(5).

[15] *Id.* § 1103(a)(5)(b).

and convincing evidence, that termination of Mother's parental rights was in the Child's best interests.

(14) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

_/s/ Karen L. Valihura_
Justice

8